Ralph SCOTT, Appellant,

v.

MASSACHUSETTS BONDING & INSUR-
ANCE COMPANY, Appellee.

Court of Appeals of Kentucky.

Dec. 3, 1954.

L. D. May, Pikeville, for appellant.

Hobson & Scott, Pikeville, for appellee.

STEWART, Chief Justice.

The subject matter of this action arose out of another suit in which Ralph Scott, as plaintiff, obtained a judgment against one Greeley Thacker for $25,000 as damages for personal injuries, which plaintiff later by remittitur reduced to $15,000. Scott was struck by a county truck that Pike County had turned over to Thacker to drive. This present action sought in equity to require defendant, Massachusetts Bonding and Insurance Company, to satisfy Scott's judgment to the extent of $10,000, the limit per person of its policy of liability insurance issued to Pike County covering the county against damage to persons and property which might result from the negligent operation of its motor vehicles. The chancellor decreed the insurance company was not liable. This appeal is from the judgment dismissing the complaint. Thacker, a nominal co-defendant below in this action, is not a party to this appeal.

The evidence, about which there is little or no dispute, reveals that on April 29, 1949, Thacker, an employee of the above county who was operating a truck covered by the policy of insurance involved herein, was hauling gravel from Grapevine Creek in Pike County when the accident occurred out of which this litigation arose. He had been previously instructed by Tom Burchett, the county road maintenance foreman and the person in charge of the road maintenance crew for the county, to transport gravel from the creek in a westwardly direction and spread it on two roads, one of which ran up and beside Hurricane Creek and the other up and alongside Jonican Creek.

On the same occasion, James T. Justice was in need of some gravel for a private driveway, leading from U. S. Highway 460 up to his residence on his farm, so he sought out Thacker and requested him to haul several loads to his property. Thacker agreed to deliver the gravel as an accommodation. The above highway on which Justice's land is located parallels Grapevine Creek and extends in an east-west direction. In order to reach the Justice farm from the location where the gravel was being loaded on the county trucks, one must drive out of Grapevine Creek, gain access to the nearby highway and travel eastwardly for a little more than a mile. As a consequence the gravel intended for Justice was hauled away from, in an opposite direction from, the two county roads which were undergoing resurfacing.

Two loads were delivered and dumped inside the Justice fence line. On the third trip Thacker permitted Robert Justice, a 15-year-old boy who had no driver's license and who was no relation of James T. Justice, to climb up in the cab and operate the loaded truck. Thacker, however, sat by the boy while the latter drove. When the truck, with young Justice under the wheel, arrived at the unloading point at the home of James T. Justice, the boy, in an effort to maneuver it into position to dump the gravel, lost control of it, ran through the fence and severely injured Scott who was standing near by, watching the progress of the work.

The county judge, the chief executive officer of Pike County, denied that Thacker had been authorized directly or indirectly to transport gravel to the private driveway of James T. Justice. Burchett, the road maintenance foreman from whom Thacker took his work orders, testified Thacker violated his instructions when he complied with the request of James T. Justice. The testimony of Thacker sheds no light on the issue under consideration pro or con.

Appellant commenced this litigation originally against Pike County, Robert Justice and Thacker, but later dismissed the action against Pike County and Robert Justice, and the case went to trial against Thacker only.

We have heretofore detailed the result of this trial.

The question raised on this appeal is whether the insurance company under the recited facts is liable to Scott on his judgment against Thacker under the applicable portion of the policy involved known as the "omnibus clause" which, so far as applicable here, reads:

"Definition of Insured. The unqualified word 'insured' includes the named insured and also includes * * * any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, * * *."

Thacker's acts would not come within the policy provision unless at the time of the accident "the actual use of the automobile was (is) by the named insured or with its (his) permission." The insurance company insisted at the trial and now maintains: First, Thacker did not have permission to use the county truck for a private purpose; and second, Thacker had no permission to consent to the use of the truck by the 15-year-old boy, who was not authorized by law to operate a motor vehicle. The chancellor found for the insurance company on its second ground alone and dismissed the complaint.

Although we shall confine our decision of this case to the first ground, we might note in passing that where the owner entrusts the operation of his car to one and he thereafter turns the driving of it over to an inexperienced person who has no operator's license, and an accident occurs resulting in damage to the person or property of another, it has been held that the use of the automobile was not with the named insured's permission within the meaning of the omnibus clause in a policy such as the one we have under consideration. The fact that the first permittee was an occupant of the car at the time did not alter the result. Hawkeye Casualty Co. v. Western Underwriters' Ass'n, D.C., 53 F.Supp. 256; Knee-

land v. Bernardi, 317 Mass. 517, 58 N.E.2d 823. This principle was announced in these two cases and was quoted with approval by Judge Shelbourne of the District Court for the Western District of Kentucky in Wise v. Ohio Casualty Ins. Co., 96 F.Supp. 380, wherein it was held it could not be implied that the owner of the car involved in an accident would agree to the unlawful use to which it was subjected at the time, namely, illegal traffic in whiskey, although the original permittee was in the automobile on the same occasion. In the case at bar the 15-year-old boy not only did not have an operator's license, he could not legally obtain one. KRS 186.440(1). This fact alone would raise a question as to whether the boy could be held an additional insured within the terms of the omnibus clause of the policy.

■ The motor vehicle involved here is classified in the policy as "CML", that is, commercial, and it should be pointed out in this respect that a general permission, or a comprehensive permission, is much more readily to be assumed where the use of the motor vehicle is for social or non-business purposes than where the relationship of master and servant exists and the employment of the motor vehicle is for business purposes. See Jordan v. Shelby Mutual Plate Glass & Casualty Co., 4 Cir., 142 F. 2d 52.

■ We are also dealing in this instance with a public truck which was to be used exclusively for county purposes and particularly for constructing and maintaining county roads where the cost of such work was to be paid out of the county's revenue. A county is unauthorized to improve the private property of its citizens. Furthermore, there is a statute which requires the landowner who fronts on a public road to construct and keep in repair at his expense all approaches to his property. KRS 179.-380(1).

■ The relationship between Pike County and Thacker was that of master and servant and the only permission Thacker had was permission to operate the truck to perform the labor he was ordered to do. Accurately speaking, he was not using the truck with permission at all. He was driving it under strict orders to load gravel on it at Grapevine Creek and then haul the gravel by the most direct route to the two roads we have mentioned to be spread thereon. Afterwards, he was to return promptly to the creek for more gravel. He was instructed to confine his operations to this particular task and the record shows beyond dispute that he had no authority to use the truck for any other purpose.

In this action we are not dealing with an extended use of an ordinary automobile which had been entrusted to another for purely social purposes. A bailment results in such a case and usually there exists between the bailor and bailee a rather close relationship of either kinship or friendship, and an extended use by the bailee of the automobile which goes beyond the express permission of the bailor may well have the implied permission of the bailor. The extended use is often the same type of use as that expressly permitted. This concept applies to the facts set forth in United States Fidelity & Guaranty Co. v. Hall, 237 Ky. 393, 35 S.W.2d 550, and appellant, asserting this case is in point, argues that we should apply the principle of extended use here. We do not agree; the use of the truck permitted to Thacker (which was only county use) falls into an entirely different category.

We repeat that we do not have a deviation in the nature of an extended use, but we have actually an independent venture upon the part of Thacker, unrelated to the county's business. Contrary to the specific instructions given him and in violation thereof, Thacker embarked upon an ill-fated mission which under no circumstances could have benefited his employer and which, in reality, produced the unfortunate accident that gave rise to this litigation. We can construe Thacker's action in delivering the gravel to a private driveway as nothing less than an abandonment of the work he had been directed to perform. To imply a permission in fact for the extended

use of the truck by Thacker at the time Scott was hurt would require us to ignore the evidence.

From a consideration of all the facts we conclude it cannot be reasonably said that the use of the truck at the time of the accident was with the express or implied consent of the named insured.

Wherefore, the judgment is affirmed.