**EAGLE CLOTHES, INCORPORATED**

v.

**Louis FRANKEL and Benjamin Kogan d/b/a Eagle Pants Shop and Eagle's.**

**Civ. A. No. 3751.**

United States District Court
E. D. Virginia,
Richmond Division.

Dec. 10, 1964.

R. Harvey Chappell, Jr., and Christian, Barton, Parker, Epps & Brent, Richmond, Va., Roberts B. Larson and Larson & Taylor, Washington, D. C., for plaintiff.

Harry P. Anderson, Jr., and Satterfield, Haw, Anderson, Parkerson & Beazley, Richmond, Va., for defendants.

BUTZNER, District Judge.

This is an action for trademark infringement and unfair competition.

The plaintiff, Eagle Clothes, Incorporated, is a New York Corporation with its principal place of business in New York. It has a large factory in Brooklyn, New York. It was incorporated in 1946, and its predecessor, a partnership trading under the name of Eagle Clothes, was founded in 1919.

The plaintiff is the second or third largest manufacturer of quality men's suits, top coats and overcoats in the country. It also manufactures slacks and sport coats. The term "quality" is a semi-technical term referring to the fact that handwork is done on the plaintiff's products. Prices of the plaintiff's products range above $85.

The plaintiff and its predecessor since 1919 have sold these goods throughout the United States and in foreign countries in amounts totaling approximately $250,000,000. Its products are sold through about 1,200 independent retail stores in the United States.

Since 1919 the plaintiff and its predecessor have manufactured and sold men's suits and overcoats under the trademark EAGLE. The trademark has been used with and without the symbol of an eagle.

The plaintiff has registered in the United States Patent Office four trademark registrations, Nos. 350,131, September 14, 1937; 413,454, April 24, 1945; 660,172, April 1, 1958; and 711,-913, February 28, 1961. In all of these registrations either the word EAGLE or the symbol of the eagle is the dominant feature of the registration mark. All of the registrations are directed to overcoats, top coats and suits. Registration No. 711,913 is for fabrics used only in the form of the men's overcoats, top coats and suits. The registrations are valid and in full force and effect.

Plaintiff's trademark EAGLE has been extensively advertised nationally, in Virginia and in the City of Richmond. Plaintiff has expended more than $4,-000,000 in advertising its clothing and its trademark. It has used nationally distributed magazines, trade papers, billboards, tie-ins with radio and television programs and testimonials from well-known persons.

The plaintiff also assists retail outlets which sell its EAGLE clothes in advertising. It provides financial assistance for outdoor store signs which display the plaintiff's trademark EAGLE or otherwise indicate the store as featuring plaintiff's clothing. It provides suggestions and mats for newspaper advertising layouts. It pays for one-half of the space, with certain limitations, of approved retail advertising placed by stores selling its clothes.

The plaintiff's trade name EAGLE CLOTHES and the trademark EAGLE are widely known as designating the plaintiff and its products.

In Virginia since 1947 the sales of plaintiff's clothes have totaled approximately $2,886,000. Its products are sold in stores located in Richmond, Roanoke, Springfield, Vienna, Alexandria, Newport News, Danville, Suffolk, Petersburg, Portsmouth and Norfolk.

In Richmond, Virginia, since 1939, the plaintiff's clothes have been sold by Newman's, Incorporated, on Broad Street. The plaintiff ships its merchandise f. o. b. its factory in New York. No goods have been sold in Virginia on consignment. Newman's, Incorporated has employed decals on store windows showing that it sells plaintiff's EAGLE clothes. In 1963, Newman's, Incorporated, installed a new store front, which included a large sign displaying the plaintiff's trademark EAGLE CLOTHES.

Newman's, Incorporated, uses the plaintiff's advertising mats and runs between ten and fifteen advertisements a year, mentioning EAGLE CLOTHES. The sale of EAGLE CLOTHES in Newman's, Incorporated amounts to over $100,000 a year. Some of these clothes are sold with the label EAGLE CUSTOM SHOP, which is one of the labels that plaintiff places in its clothes. Newman's, Incorporated is listed in the phone book under the heading of Newman's and also under the heading of EAGLE CLOTHES.

The defendants, Louis Frankel and Benjamin Kogan, are residents of Richmond, Virginia. In 1946 they formed a partnership and started doing business as EAGLE PANTS SHOP, with a store on Hull Street, Richmond. The name EAGLE PANTS SHOP was suggested to the defendants by the discharge emblem used by the United States Army at the end of World War II. A replica of this emblem was placed on their store window. In 1950 the store was moved to another location on Hull Street and since that time the defendants have not displayed the discharge emblem.

In 1961 the defendants enlarged their store. The front facade bears a large sign, with the single word EAGLE. Underneath is an awning which bears the legend EAGLE PANTS SHOP across the front and the word EAGLE at each end.

In the latter part of 1962 Sidney Newman, owner of Newman's, Incorporated, having learned of the defendants' intention to open a store at Azalea Mall Shopping Center, Richmond, Virginia, phoned Mr. Frankel and inquired whether the defendants planned to use the word EAGLE in connection with the sale of men's suits, sport coats and slacks. Frankel replied that the defendants did intend to do business at Azalea Mall as EAGLE PANTS SHOP but that no labels using the word EAGLE would appear in any of the clothing sold. Newman unsuccessfully protested the defendants' plans. He then notified the plaintiff, who in turn protested to the defendants. Newman knew of the Eagle Pants Shop on Hull Street since about 1948. Although he was a customer of the plaintiff, he was not its agent. The plaintiff learned of the defendants' establishment in the latter part of 1962.

At the time that Newman phoned the defendants, work on the shopping center had not been completed and the defendants had not erected their signs. In March 1963 the defendants opened a store at the shopping center. Across the facade in large letters is the word EAGLE'S. In smaller letters are the words OUTFITTERS TO MEN AND BOYS. The defendants changed the name of their Azalea Mall store from EAGLE PANTS SHOP to EAGLE'S OUTFITTERS TO MEN AND BOYS at the suggestion of the real estate agent handling the leasing arrangements, who thought that the words OUTFITTERS TO MEN AND BOYS were more appropriate than PANTS SHOP. The defendants used the legend EAGLE'S OUTFITTERS TO MEN AND BOYS in their advertising and on their sales tickets and shopping bags. Generally, the word EAGLE'S is in much more prominent type than the phrase OUTFITTERS TO MEN AND BOYS.

The defendants displayed in their Azalea Mall store a man's suit with a price tag on the shoulder bearing the word EAGLE.

At the Azalea Mall store approximately twelve percent of the gross volume of sales is realized from suits. At the Hull Street store the percentage is slightly less. The other articles of clothing which

the defendants sell, constituting approximately eighty-eight percent of their merchandise, include shirts, underwear, pajamas, hats and other items which the plaintiff does not manufacture. The defendants do not sell top coats or overcoats. The suits which the defendants sell at Azalea Mall range in price from $29.95 to approximately $65. At Hull Street the top price range is in the neighborhood of $50. Most of defendants' customers are teen-agers and young men. The defendants have established a sound business and good will in both of their stores.

None of the clothing which the defendants sell bears a permanent label containing the word EAGLE. The plaintiff's clothes all have permanent labels using EAGLE various ways.

Immediately after the War the plaintiff erected billboards on roads leading from army discharge centers, advertising its clothes under its trademark and displaying the army's honorable discharge emblem of an eagle. Just before VE Day in May, 1945 the plaintiff erected a large billboard at Times Square, New York, advertising its clothes and utilizing the army discharge emblem. Neither of the defendants saw these signs. The defendants learned of the Eagle Clothing Company between 1956 and 1959.

The defendants did not intentionally appropriate the plaintiff's trademark. They have not used the mark for purposes of deception.

The defendants' use of EAGLE or EAGLE'S has caused and is likely to cause confusion or mistake by leading the public to believe that the men's suits advertised and sold by the defendants are connected in some way with the plaintiff's product.

Articles of men's clothing, such as shirts, ties, gloves and underwear, shoes, suspenders and belts, are sold under the trade name EAGLE by companies other than the plaintiff and defendants. In New York, unconnected with either the plaintiff or defendants, is an Eagle Pants Shop.

The defendants insist that they are not infringing upon the plaintiff's mark. They point out that the plaintiff's mark appears on labels affixed to the men's clothes it manufactures, while their use of the word EAGLE is limited to the name of the store in which they sell their goods. They emphasize that on the suits they sell, no permanent label bearing the word EAGLE appears. They offered to discontinue the use of the word EAGLE on their price tag.

The distinction which the defendants seek to draw between the use of the word EAGLE on clothing and the use of this word to name their store is not controlling.

Section 32 of the Lanham Act, the Trademark Act of 1946, which has been codified as 15 U.S.C. § 1114, provides in part:

"(1) Any person who shall, without the consent of the registrant—

"(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; * * *, shall be liable in a civil action by the registrant * * *."

Title 15 U.S.C. § 1127 defines "colorable imitation" as including "any mark which so resembles a registered mark as to be likely to cause confusion or mistake or to deceive".

The test of infringement is the result—not the manner—of using the imitation mark. Judge Dobie in Dwight S. Williams Company v. Lykens Hosiery Mills, 233 F.2d 398, 401 (4th Cir. 1956), stated:

"In determining infringement, it is not necessary to prove actual confusion. The test is whether there is likelihood of confusion. * * *"

The defendants are using a colorable imitation of the plaintiff's mark in connection with the sale, distribution and

advertising of men's suits, sport coats and slacks. Such use is likely to cause confusion or to cause mistake or to deceive with respect to the plaintiff's products manufactured, advertised and sold under its trade name and trademark. Indeed, actual confusion has resulted. Under these circumstances the plaintiff is entitled to relief. General Shoe Corporation v. Rosen, 111 F.2d 95 (4th Cir. 1940); Drexel Enterprises, Inc. v. Heritage House of Dallas, Inc., 136 U.S.P.Q. 415 (N.D.Texas, 1963); Chips 'N Twigs, Inc. v. Prives, 226 F.Supp. 529 (N.D. Calif.1963).

■ The fact that the clothing which the defendants sell is cheaper than the plaintiff's clothing is no defense. The distinction in price alone is not so great that confusion is eliminated. One witness testified that it was not until he closely examined and felt the garment defendants were displaying that he realized that it was not the plaintiff's product.

Drexel Enterprises, Inc. v. Richardson, 312 F.2d 525 (10th Cir. 1962), upon which the defendants rely, does not support their position. In Drexel, the trial judge found as a fact that no confusion was caused or likely to be caused by the use of similar names. There, as contrasted with the situation in the case at bar, the record contained no direct evidence of confusion.

■ It is immaterial that the defendants did not intend to deceive in using the plaintiff's mark. Little Tavern Shops v. Davis, 116 F.2d 903, 906 (4th Cir. 1941); Polaroid Corporation v. Polaraid, Inc., 319 F.2d 830, 835 (7th Cir. 1963).

■ Mr. Newman's knowledge of the defendants' store on Hull Street in 1948 is not a bar to the plaintiff's prosecution of this suit. Mr. Newman was not an agent of the plaintiff. His knowledge can not be imputed to the plaintiff. The evidence shows that the plaintiff first learned of the defendants' activities in the latter part of 1962. No delay on its part bars the prosecution of this suit.

Cf. Stork Restaurant v. Sahati, 166 F.2d 348, 362 (9th Cir. 1948).

Avon Shoe Co. v. David Crystal, Inc., 279 F.2d 607 (2nd Cir. 1960), cited by the defendants, does not conflict with the conclusion that the plaintiff is entitled to relief. There, the plaintiff used its mark on women's shoes and the defendant used a similar mark on sportswear. The Court found that there was no intention upon the part of the plaintiff to make or sell women's sportswear. The distinguishing feature between that case and the case at bar is the lack of competition between the parties in Avon. Here, the plaintiff's products sold by Newman's, Incorporated, compete with clothing sold by the defendants.

■ . The word EAGLE is not descriptive when used in connection with the advertising and sale of men's suits. It is unique and fanciful. The defendants' use of EAGLE or EAGLE'S in the sale of men's suits, sport coats and slacks infringes the plaintiff's statutory and common law trade name and trademark. The defendants' use constitutes unfair competition. Cf. Little Tavern Shops v. Davis, 116 F.2d 903 (4th Cir. 1941).

■ The plaintiff's trade name EAGLE CLOTHES, INCORPORATED, and its mark EAGLE have acquired sufficient secondary meaning to satisfy the requirements of Virginia law. Rosso and Mastraco Inc. v. Giant Food Shopping Center, 200 Va. 159, 104 S.E.2d 776 (1958).

The Court concludes that the plaintiff is entitled to an injunction against the defendants, restraining them from infringing the plaintiff's common law and statutory registered trademarks and from competing unfairly with the plaintiff by using a trademark or trade name incorporating the name EAGLE or the representation of an eagle either alone or in combination with other words when used with the advertising, display or sale of men's suits, coats and slacks.

Counsel for the plaintiff are requested to prepare the sketch of an order consistent with this memorandum.